[Cite as *Adams v. Adams*, 2020-Ohio-3407.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| SARA ELIZABETH ADAMS, | : | |
| Appellee, | : | CASE NO. CA2019-07-122 |
| | : | O P I N I O N |
| - vs - | | 6/22/2020 |
| | : | |
| TIMOTHY AARON ADAMS, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2018-04-0295

David B. Brewer, 110 North Third Street, Hamilton, Ohio 45011, for appellee

Scott N. Blauvelt, 315 South Monument Avenue, Hamilton, Ohio 45011, for appellant

**PIPER, J.**

{¶ 1}   Appellant, Timothy Adams ("Husband"), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, dividing property as part of his divorce from appellee, Sara Adams ("Wife").

{¶ 2}   The couple was married on July 16, 2016.  On March 22, 2018, during a counseling session, Husband told Wife that their marriage was over, and Wife later filed for

divorce on April 13, 2018. No children were born issue of the marriage.

{¶ 3} Before the couple wed, Husband's parents purchased a house in 2014 and the parties moved into the home. After the marriage, the parties continued to reside in the house with Husband's parents. Husband paid $1,000 per month in rent. Wife did not contribute to the rent, as she had given Husband's parents $7,500 at the time they purchased the home in 2014. Husband's parents later refinanced the house and added Husband to the title and mortgage. However, Wife was not added to either. Wife obtained two loans related to the house, one for a fence and one for a fireplace, totaling $7,000, a portion of which was still owed at the time of the divorce.

{¶ 4} The parties reached several stipulations during the divorce proceedings, but were unable to agree on some issues of property distribution. As such, the trial court held two hearings regarding distribution of debts and assets. The trial court determined that Husband was a one-third owner of the home and that Wife was entitled to half of his share of the equity. Additionally, the trial court ordered Husband to pay the remaining debt on the loans Wife secured. The trial court also found that Husband committed financial misconduct by transferring funds from marital bank accounts and for incurring excessive credit card debt before Wife filed for divorce.

{¶ 5} Husband now appeals the trial court's decision, raising three assignments of error for our review. In his first two assignments of error, Husband challenges the trial court's distribution of property specific to the trial court's determination of the date of marriage as well as the trial court's finding that the home was marital property subject to division.

{¶ 6} We are unable to address Husband's first two assignments of error, as the trial court's written decision contains such inconsistencies and ambiguities that we cannot perform a meaningful review.

{¶ 7}   The trial court found that the marriage lasted from July 16, 2016 to March 23, 2018.[1]  However, the trial court's orders include distribution of equity in the home as marital property even though the house was purchased by Husband's parents prior to the beginning of the marriage.  The trial court also considered Wife's contribution of $7,500 at the time the home was purchased, even though such occurred approximately 18 months prior to the ceremonial date of the marriage.  While the trial court noted its discretion in choosing the beginning and end dates of the marriage, its entry is unclear whether the trial court expanded the start of the marriage to include the time in which the parties cohabitated in the home before their ceremonial marriage occurred.

{¶ 8}   The trial court's order distributing equity in the house also contains inconsistencies.  Despite the trial court's finding that the residence was marital property, it cited law to support the rule that an increase in the value of *separate* property due to either spouse's efforts can be classified as marital property.  Such reliance on that rule of law implies that the trial court treated the home as separate property, rather than marital property as it had previously stated.  The ambiguity discussed above regarding the duration of the marriage further compounds the ambiguity that results from the trial court's treatment of the residence as both marital and separate property.

{¶ 9}   Thus, this court is unable to review the trial court's division of property, as the trial court's decision does not clearly indicate what marital duration dates it was using and whether the equity in the home is marital or separate property.  On remand, the trial court should perform an analysis of the facts and evidence on record from the previous two hearings to resolve inconsistencies in its written decision and entry.

{¶ 10}  This court, in no way, speaks to the merits of the property distribution, and

---

1. The trial court used March 23, rather than March 22, which was the date of counseling testified to by Husband.

makes no indication of how the court's analysis should be resolved. We are simply unable to review the trial court's decision for an abuse of discretion when we are unsure of the trial court's specific orders absent clarification. Moreover, we note that this remand need not involve the submission of additional evidence, as the parties were heard over the course of two hearing dates and the trial court has the evidence needed to render a revised analysis of the issues.

{¶ 11} The trial court's decision as to the distribution of property is reversed, and the cause is remanded so the trial court may clarify its findings as rendered and provide a cohesive analysis for the purposes of a meaningful review. Husband's first two assignments of error are therefore, sustained.

{¶ 12} Assignment of Error No. 3:

{¶ 13} THE TRIAL COURT [SIC] DETERMINATION THAT APPELLANT COMMITTED FINANCIAL MISCONDUCT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Husband argues in his third assignment of error that the trial court erred in determining that he committed financial misconduct.

{¶ 15} While we sustained Husband's first two assignments of error because of inconsistencies in the trial court's decision, we need no further clarification regarding the trial court's decision that Husband committed financial misconduct.

{¶ 16} An appellate court employs the manifest-weight-of-the-evidence standard when reviewing a trial court's determination that a party engaged in financial misconduct. *Robinson v. Robinson*, 12th Dist. Warren No. CA2012-11-118, 2013-Ohio-4435, ¶ 14. The reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the

[judgment] must be reversed and a new trial ordered." *Smith v. Smith*, 12th Dist. Clermont No. CA2016-08-059, 2017-Ohio-7463, ¶ 10.

{¶ 17} According to R.C. 3105.171(E)(4), financial misconduct includes, but is not limited to "the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. *Garcia v. Samano*, 12th Dist. Butler No. CA2018-05-094, 2019-Ohio-3223.

{¶ 18} The record indicates that Husband began transferring money between accounts as soon as 30 minutes after the counseling session ended during which he told Wife the marriage was over. The next day, Husband continued transferring money, and then wrote checks to family members using the transferred funds. On some of the checks he wrote, Husband backdated them to prior to the counseling session. Husband also made purchases in the days following the counseling session with a marital credit card, including a firearm for $568.30, ammunition for $144.86, $215.94 for a dresser, and over $900 for a bed.

{¶ 19} Husband testified that the checks to family members were to pay rent, to purchase carpeting, as well as make a down payment on behalf of his younger brother for a camper. The trial court determined that Husband's testimony lacked credibility regarding the reasons for writing checks to his family members and his need to make purchases on the credit card after the counseling session. We will not disturb this finding, as the trial court was in the best position to judge Husband's testimony regarding the expenditures.

{¶ 20} Husband's financial misconduct is supported by the manifest weight of the evidence where the record indicates that he transferred money, made purchases on a marital credit card, and gave money to family members using backdated checks immediately after his announcement that the marriage was over.

{¶ 21} Husband even admitted during his testimony that he did not want his access to the funds limited because of the divorce, and he incurred marital debt on purchases for himself.  Husband testified that after the counseling session, he "freaked out… I didn't want it locked up and unable to do - - or pay the bills that I did have to pay because it would have been locked up from some restraining order."  As such, the trial court did not create a manifest miscarriage of justice in determining that Husband acted to interfere with Wife's rights to marital assets.

{¶ 22} After reviewing the record, we find that the trial court's decision regarding Husband's financial misconduct was not against the manifest weight of the evidence. Husband's third assignment of error is overruled.

{¶ 23} Judgment affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this Opinion.

S. POWELL, P.J., and RINGLAND, J., concur.